UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MARIA SUAREZ,

Petitioner,

v.

CARLOS DEL TORO, Secretary, U.S. Dept. of the Navy,

Respondent.

Case No.: 22-cv-00021-GPC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**[ECF No. 33]**

\\\

\\\

\\\

\\\

\\\

On February 10, 2022, Defendant Carlos Del Toro ("Defendant") filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). The Court set a briefing schedule, and the parties have fully briefed the matter. ECF Nos. 35, 36. Based upon the parties' papers, the Court HEREBY GRANTS Defendant's Motion to Dismiss. Because this matter is suitable for disposition on the papers without oral argument, the Court HEREBY VACATES the motion hearing previously set for April 8, 2022.

# I. BACKGROUND

## A. Factual Background

Plaintiff, proceeding *pro se,*[1] filed the operative Second Amended Complaint on July 23, 2021. ECF No. 12 ("SAC"). The SAC alleges that Plaintiff worked as an Equal Employment Specialist for the Department of the Navy from January 11, 2016 through April 30, 2018. SAC ¶ 5. In that role, she was responsible for processing and resolving informal and formal complaints of discrimination and reprisal centered on alleged Title VII violations. *Id.* She also managed the Equal Employment Opportunity (EEO) process and advised complainants as to the Alternative Dispute Resolution (ADR) process available to them. *Id.* In April 2017, Plaintiff was assigned to process Reasonable Accommodation (RA) cases without any formal training. *Id.*

### 1. Interactions with Hamilton McWhorter

In 2017, Plaintiff requested assistance from her supervisor, Hamilton McWhorter ("McWhorter") in processing two RA requests, because she did not feel comfortable processing them without formal training. *Id.* ¶ 17. McWhorter emailed Plaintiff and allegedly humiliated and chastised her for requesting his assistance, saying: "I will not process your RA requests . . . You are a senior EEO specialist and should have a full understanding of all aspects of EEO processes and your role during other processes . . .

[1] Plaintiff has since retained counsel. ECF Nos. 24, 32.

You have been getting paid as a full functioning Specialist for quite some time, so to hear that you are experiencing difficulties with RA requests/case management is quite concerning for me." *Id.* ¶ 17. This email caused Plaintiff to feel anxious and unable to sleep at night. *Id.* In addition, in April 2017 McWhorter directed Plaintiff to handle her co-worker Mario Villalba's assigned formal complaint even though Plaintiff had previously expressed concerns about handling RA cases without formal training. *Id.* at 23.

According to Plaintiff, in early July she sent McWhorter a request that she be allowed to attend a training with the Defense Equal Opportunity Management Institute (DEOMI), which Plaintiff felt would provide needed training as to RA matters. *Id.* ¶ 18. McWhorter responded that he had sent out a call for applications to the training on June 22, 2017 and that Plaintiff had failed to apply. McWhorter also stated that "I cannot force you to attend professional development training . . . There aren't too many formal classrooms that will teach you about the reasonable accommodation process . . . There are webinars, case law, and [the] EEOC web-site . . . You can gain this knowledge the same way we stay on top of EEO laws, by conducting research." *Id.* ¶ 19. Plaintiff protests that she could not have applied when McWhorter sent out the call for applications because she was on extended sick leave from June 15, 2017 to July 5, 2017, and that McWhorter improperly denied her the opportunity to attend the training despite her repeated requests on July 7 and July 11, 2017. *Id.* ¶ 23-24.

Throughout this time period, Plaintiff kept McWhorter informed that she had been off work during the months of May and June 2017 due to stress and anxiety, including panic and asthma attacks. *Id.* ¶ 25. Plaintiff submitted medical leave (FMLA) forms to McWhorter upon her return to work on July 5, 2017. *Id.*

Finally, Plaintiff alleges that McWhorter harassed her via email on August 9, 2017. *Id.* ¶ 27. According to Plaintiff, she first sent him an email with a greeting. Then, on

McWhorter's request, she forwarded him some information in a previous email, this time without a body or greeting. McWhorter then "humiliated" and "berated" Plaintiff again by requesting that she include a greeting or message in the body of the email, because simply forwarding an email without more was unprofessional. *Id.* Plaintiff forwarded this email from McWhorter to her supervisor, Therese Guy, indicating that she felt this was harassment. *Id.* Plaintiff had an anxiety attack and experienced shortness of breath and shaking hands as a result of this email. *Id.* She had to go to an urgent care and then was placed off work by her psychiatrist through September 1, 2017. *Id.*

**2. Interactions with Mario Villalba**

Plaintiff alleges that her coworker, Mario Villalba ("Villalba") harassed her and created a hostile work environment by repeatedly using abusive language, pointing his middle finger at Plaintiff, and asking her when she was going to retire. *Id.* ¶ 29. Villalba reportedly also told McWhorter and James Cummins, Plaintiff's co-worker at the time, that Plaintiff should retire. *Id.* Plaintiff told her supervisor, Guy, about these comments but no action was taken. *Id.*

On May 5, 2017, Plaintiff had an anxiety attack at work and filed an EEO discrimination complaint. Shortly after Plaintiff's return to work on May 16, 2017, Villalba came into her office and started gesturing at Plaintiff with his middle finger and repeatedly yelling expletives. *Id.* ¶ 32. When Plaintiff tried to put her head down, Villalba yelled that she should look at him. *Id.* Plaintiff also alleges that Villalba "bent down and pointed his middle finger on his buttocks" and said, "whoever wants to get me fired, fuck them!" *Id.* Plaintiff tried to report this incident to HR Director Stephanie Wright and to her former supervisor, Danny Kealoha, but neither were in their office at the time. *Id.* The incident made Plaintiff very anxious and unable to sleep. *Id.*

**3. Interactions with Therese Guy**

Plaintiff alleges that she kept Therese Guy, her supervisor, informed of the situation with McWhorter by forwarding the harassing emails from McWhorter to Plaintiff, but that Guy did not respond to the emails or take any action. SAC ¶ 22, 27. Guy also failed to hold Villalba and McWhorter accountable for saying that Plaintiff should retire. *Id.* ¶ 29. Plaintiff also argues that Guy discriminated against Plaintiff based on her disabilities (asthma, depression, and anxiety) and "took reprisal actions against me for filing an EEO Complaint against her." *Id.* ¶ 33. Guy reportedly denied Plaintiff an ADA reasonable accommodation, refused to reassign RA cases to other EEO specialists until Plaintiff was fully trained, and failed to engage in an interactive process for disability accommodation with Plaintiff. Id. When Plaintiff informed Guy that she felt overwhelmed by her caseload, Guy allegedly informed Plaintiff that the entire team had a full workload, and failed to accommodate Plaintiff or reassign any of her cases. Plaintiff also alleges that Guy denied Plaintiff the opportunity to attend an EEO training in New Orleans, LA, scheduled for April of 2017. *Id.* ¶ 41. Guy instead chose Villalba to attend, purportedly because he was a more consistent worker. *Id.* However, according to Plaintiff, Villalba was only handling RA cases, while Plaintiff was processing a wide variety of complaints and responsibilities. *Id.* In sum, Plaintiff contends that Guy ultimately took reprisal actions against her for filing an EEO complaint and a worker's compensation claim and forced her to retire from federal employment.

**4. Interactions with James Cummins**

James Cummins, who later became Plaintiff's supervisor, allegedly discriminated against her based on disability and took reprisal actions against Plaintiff for filing an EEO complaint and a worker's compensation claim. *Id.* ¶ 42. After experiencing dizzy spells and shortness of breath, Plaintiff informed Cummins that she was diagnosed with vertigo and was feeling dizzy at work. *Id.* She then verbally requested an ADA reasonable

accommodation to work from home two times a week, which Cummins denied because he reasoned that if Plaintiff felt dizzy at work, she would feel dizzy at home. *Id.* In May 2017, Plaintiff had a severe vertigo attack at work and fainted while at Villalba's cubicle. *Id.* Villalba called 911 and Plaintiff was taken to the emergency room at Naval Medical Hospital for treatment. *Id.* Afterward, Plaintiff provided Cummins with medical documentation of this incident.

On March 27, 2018, Cummins gave Plaintiff a memo for unsatisfactory attendance from March 2017 through March 2018, though he was not Plaintiff's supervisor from March 2017 through August 2017. *Id.* ¶ 45. Plaintiff alleges that Cummins made false statements in this memo, and that Plaintiff had provided medical documentation to Guy, her supervisor at the time, and her leave was approved. *Id.* In this memo, Cummins also indicated that if Plaintiff did not make herself immediately available for regular full-time duty, action might be taken to remove her from federal service. *Id.* ¶ 47. Plaintiff alleges that this memo forced her to retire from federal service. *Id.* Cummins also charged Plaintiff with 20.83 hours of Absent Without Leave (AWOL). *Id.* ¶ 46. Plaintiff alleges this was improper and unwarranted because she had provided Cummins with the necessary medical documentation for her absences, including the time when she had to be taken to the emergency room at Naval Hospital. *Id.* Finally, Plaintiff alleges that Cummins spoke with Jill Salaszny, an HR representative, to "see what course of action they could take to terminate me from my employment with the Dept. of the Navy without being incriminated for their actions." *Id.* ¶ 48.

**B. Procedural Background**

On May 5, 2017, Plaintiff filed an informal EEO complaint with the Defendant, followed by a formal EEO complaint in September 2017. *Id.* ¶ 6. Defendant investigated these complaints but reached no decision or resolution on them. *Id.* On July 16, 2018, Plaintiff requested a hearing with the EEOC. *Id.* ¶ 7. On March 25, 2021, the EEOC

provided Plaintiff with a Decision and Order Granting the Agency's Motion for Decision Without a Hearing. *Id.* ¶ 8. On April 8, 2021, the Department of the Navy issued a Final Order and a Notice of Right to Sue. *Id.* ¶ 9. Plaintiff filed her initial Complaint on July 2, 2021, in the Northern District of California, and the case was transferred to this Court on January 7, 2022. ECF No. 29.

## II. DISCUSSION

### A. Legal Standard under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, i.e. whether the complaint lacks either a cognizable legal theory or facts sufficient to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the motion, the Court accepts the allegations in the complaint as true and construes the pleadings in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The court is also not required to accept as true mere legal conclusions. *Id.* Determination of whether a complaint states a plausible claim is "context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. Dismissal without leave to amend is improper unless it is clear that amendment would be futile. *Id.*

**B. Whether Plaintiff's Claims are Sufficiently Pled to Survive a Rule 12(b)(6) Motion**

**1. Subject Matter Jurisdiction**

As an initial matter, to establish subject matter jurisdiction in this Court over Plaintiff's Title VII claims, Plaintiff must have exhausted her administrative remedies by filing a timely charge with the EEOC. *See Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). Because Plaintiff's claims fall within the scope of the EEOC's investigation, and because she was issued a right to sue letter, Plaintiff has exhausted her administrative remedies and the Court may proceed to a consideration of the merits.

**2. Disparate Treatment Under Title VII**

In order to establish a prima facie case of discrimination, a plaintiff must show (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she was subject to an adverse employment action; and (4) that similarly situated individuals outside her protected class were treated more favorably. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 702, 802 (1973). An adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). "Adverse employment actions may include not only actions an employer affirmatively takes against an employee (e.g. firing or demoting the employee) but also situations in which the employer denies an employee a material employment benefit or opportunity that was otherwise available to her." *Campbell v. Hawaii Dept. of Educ.*, 892 F.3d 1005, 1013 (9th Cir. 2018) (citing cases in which denials of promotion and transfer opportunities were considered adverse employment actions).

Defendant argues that the incidents Plaintiff complains of are not adverse employment actions. ECF No. 33 at 14. In addition, Defendant argues that Plaintiff does

not sufficiently allege that her supervisors and coworkers treated her differently than other similarly situated employees not in her protected classes. *Id.* Plaintiff counters that because she was tasked with a more burdensome workload involving RA requests, this constitutes an adverse employment action. ECF No. 35 at 11. In addition, Plaintiff argues that Cummins erroneously charged her with over 20 hours of AWOL, resulting in lost pay, which constitutes a materially adverse employment action. *Id.* at 12. Finally, Plaintiff argues that her male coworkers were not subject to the same conditions and adverse treatment as she was. *Id.*

The Court agrees that, even taking all of Plaintiff's allegations as true and construing the pleadings in the light most favorable to the non-moving party, Plaintiff has not adequately alleged that she was subject to an adverse employment action due to a protected characteristic. A disparate treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action. *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012). Though Plaintiff states in a conclusory manner that she was "forced to retire" by her supervisors' actions, the Court does not find that her allegations support this conclusion. Plaintiff has not pointed to actions that constitute the "force" she mentions. The Court does not find that assigning Plaintiff RA requests constitutes the assignment of more or overly burdensome work responsibilities, since Plaintiff herself acknowledges that RA requests were part of her position description. *See* SAC ¶ 24. Nor has Plaintiff adequately shown that Guy choosing Villalba to attend a training in New Orleans constitutes an adverse employment action akin to firing, demoting, or denying her a material benefit that was otherwise available to her.

Even assuming that these actions, including the emails and the AWOL pay deduction, *are* actionable adverse employment actions, Plaintiff has not adequately alleged that such actions were taken as a result of her protected characteristics (disability,

race, gender). "Disparate treatment occurs where an employer has treated a particular person less favorably than other *because* of a protected trait." *Wood*, 678 F.3d at 1081 (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)) (emphasis added). Of these actions, only the AWOL pay deduction could plausibly be interpreted as having occurred "because" of Plaintiff's protected characteristic, i.e. perhaps because she had to take leave due to disability. But there, Plaintiff has then failed to allege that she was treated differently to a similarly situated coworker who did not share her protected status—for example, a coworker without protected characteristics who had to take a similar amount of leave and was not designated AWOL. In sum, the Court finds that Plaintiff has not clearly alleged facts showing that she was subject to an adverse employment action affecting the material conditions of her employment. She also has not shown that these alleged actions were "because" of her protected traits. Finally, Plaintiff has failed to show that similarly situated individuals outside of her protected class were treated more favorably. Plaintiff's claim of disparate treatment under Title VII is therefore DISMISSED WITHOUT PREJUDICE.

**3. Disparate Treatment Under the ADEA**

The Age Discrimination in Employment Act (ADEA) makes it unlawful to discharge any individual due to that individual's age. 29 U.S.C. § 623(a)(1). To establish a prima facie case of disparate treatment under the ADEA, a plaintiff must show that she was (1) at least forty years old, (2) performing her job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications, or discharged under circumstances otherwise giving rise to an inference of age discrimination. *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008). An inference of discrimination "can be established by showing the employer had a continuing need for the employees' skills and services in that their various duties

were still being performed . . . or by showing that others not in their protected class were treated more favorably." *Id.* (internal quotation marks omitted).

Defendants argue that Plaintiff has failed to establish an adverse employment action such as discharge, and that the only allegation supporting this claim is that Villalba, her co-worker, asked her when she would retire. ECF No. 33 at 15. Defendants also point out that Plaintiff has not alleged that she was replaced by a younger employee after her retirement. *Id.* Plaintiff argues that her age claim "encompasses all the adverse actions taken against her, including her transfer in or around April 2017 to the new position with additional duties and being charged with AWOL." ECF No. 35 at 12. Furthermore, Plaintiff argues that the claim survives even though Villalba was merely Plaintiff's co-worker because Plaintiff has alleged that Guy, Cummins, and McWhorter "all were attempting to rid the Agency of Plaintiff." *Id.*

Plaintiff has not adequately alleged a claim of disparate treatment under the ADEA. Assuming that Plaintiff has shown that she doing her job satisfactorily, she has not shown that she was discharged due to her age, nor that she was replaced by a younger employee or discharged under circumstances leading to an inference of age discrimination. The only allegation Plaintiff makes relating to her age is that Villalba said she should retire and discussed this with McWhorter. These comments by a co-worker, though they may be hurtful, are not actionable in this context because Plaintiff has not sufficiently alleged that they resulted in any tangible action against her or affected her employment. The conclusory statement that Villalba and McWhorter "discriminated against me because of my age and disability, and because I am a Hispanic female," without more, does not support Plaintiff's claim. Plaintiff has not provided facts supporting an inference of age discrimination or that any of the actions complained of in the SAC were caused by or even related to her age. Therefore, Plaintiff has failed to state


a claim as to disparate treatment under the ADEA, and this claim is HEREBY DISMISSED WITHOUT PREJUDICE.

**4. Disparate Treatment or Failure to Accommodate Under the Rehabilitation Act**

The Rehabilitation Act of 1973, 29 U.S.C. §791, prohibits employment discrimination by the federal government against those with disabilities, applying the standards of Title I of the Americans with Disabilities Act (ADA). 29 U.S.C. § 791(f). Both Title II of the ADA and the Rehabilitation Act prohibit discrimination on the basis of disability, though the ADA applies only to public entities, while the Rehabilitation Act applies to all federally-funded programs. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that she is (1) a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability. *McCoy v. Dept. of Army*, 789 F.Supp.2d 1221, 1228 (E.D. Cal. 2011). Once an employee requests an accommodation, the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation. *Weeks v. Union Pac. Railroad Co.*, 137 F.Supp.3d 1204, 1217 (E.D. Cal. 2015). "An employer who fails to engage in such an interactive process in good faith may incur liability if a reasonable accommodation would have been possible." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). The plaintiff bears the initial burden of showing that a reasonable accommodation was possible. *Id.*

Here, Plaintiff has alleged that she was disabled and otherwise qualified for employment, but she has not shown that she suffered discrimination *because* of her disability. As for the interactive process allegation, Plaintiff states in a conclusory manner that her supervisor Guy failed to engage in an interactive process with her. SAC ¶ 33. However, Plaintiff has not addressed whether a reasonable accommodation was possible

or what such an accommodation might look like. It is not clear from the SAC whether Plaintiff's claim under the Rehabilitation Act involves any other type of allegation other than a failure to reasonably accommodate, and Plaintiff's opposition briefing focuses only on the failure to accommodate. Therefore, the Court finds that Plaintiff has failed to adequately state a claim as to disparate treatment or failure to accommodate under the Rehabilitation Act, and this claim is also HEREBY DISMISSED WITHOUT PREJUDICE.

**5. Hostile Work Environment**

To prevail on a hostile workplace claim based on either race or sex, a plaintiff must show that (1) she was subject to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). "To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* The working environment must be both "subjectively and objectively be perceived as abusive" in order to permit recovery. *Id.*

Plaintiff has alleged subjective hostility here because she complained of her treatment to her supervisors and to the EEOC. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (finding that plaintiff's complaints established subjective hostility). However, the Court does not find that Plaintiff has alleged objective hostility or conduct severe or pervasive enough to alter the conditions of Plaintiff's employment and create an abusive work environment. McWhorter's emails contained criticisms of Plaintiff, but the Court does not find that Plaintiff has adequately alleged that such

criticisms rise to the level of hostility and abuse. In addition, Plaintiff cites to *Pringle v. Wheeler*, 478 F.Supp.3d 899 (N.D. Cal. 2020) for the proposition that her AWOL designation from Cummins supports a hostile work environment claim. However, in *Pringle*, unlike here, the plaintiff was subjected to a pattern of suspension, repeated AWOL designations when he was not absent from work, unwarranted negative performance reviews, and continuous denials of leave requests over the span of five years. *Pringle* is therefore distinguishable from the present case, in which Plaintiff points only to a single AWOL designation and fails to show "a concerted pattern of harassment of a repeated, routine, or generalized nature." *See Manatt v. Bank of Amer., N.A.*, 339 F.3d 792, 799 (9th Cir. 2003) (finding that two incidents of racial remarks, coupled with other "offhand remarks" made by plaintiff's co-workers and supervisor, did not constitute a pattern that altered the conditions of plaintiff's employment and therefore her hostile work environment claim must fail). Finally, Plaintiff points to Villalba's conduct (pointing his middle finger at her and yelling expletives) as creating a hostile work environment. While Villalba's conduct as alleged is certainly outside the bounds of civility and professionalism, the Court cannot find that this conduct is sufficient to support Plaintiff's claim of a hostile work environment. Although Villalba reportedly gestured and swore repeatedly during the interaction, his conduct took place on May 16, 2017 (i.e. during one day) and Plaintiff does not allege that this conduct was repeated. Plaintiff has also failed to allege that such comments were of a racial or sexual nature. The Court does not find that this single interaction, though unpleasant and inappropriate, was sufficiently pervasive to alter the conditions of the victim's employment and create an abusive working environment, as required to sustain Plaintiff's claim. *See Frias v. Corvington*, No. 2:11-cv-02178 JAM-GGH, 2012 WL 639338, at *4 (E.D. Cal. Feb. 27, 2012) (noting that a single allegations of expletive language usage was insufficient to support plaintiff's claim).

Finally, the Court addresses Plaintiff's allegations that she was forced to resign due to Defendant's conduct and the creation of a hostile work environment. SAC ¶ 31 ("They [McWhorter and Villalba] were making my work environment so unbearable to force me to retire from the Federal Government.") This is, in essence, an allegation of constructive discharge. Constructive discharge occurs "when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). "Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job." *Id.* Here, the Court finds that Plaintiff has failed to support a claim for constructive discharge because she has not alleged facts of conduct sufficiently hostile, severe, or pervasive enough to alter the conditions of her employment, let alone conduct so intolerable that it would drive any reasonable person from the work environment.

Plaintiff has therefore failed to adequately allege facts to state a claim of hostile work environment under Title VII, and this claim is HEREBY DISMISSED WITHOUT PREJUDICE.

**6. Retaliation Under Title VII, ADEA, and Rehabilitation Act**

The elements of a prima facie retaliation claim are (1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action. *Davis*, 520 F.3d at 1093-94 (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002)). For purposes of a Title VII retaliation claim, an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in

protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). The standard for an adverse action in the context of retaliation is lower than in other discrimination claims under Title VII, the ADEA, and the Rehabilitation Act because the antiretaliation provision of Title VII protects a broader range of activities. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In the Ninth Circuit, "adverse employment action" is interpreted broadly. *Ray*, 217 F.3d at 1243 (noting that actions such as lateral transfers, unfavorable job references, and changes in work schedules could constitute adverse employment actions for retaliation claims, but that offensive utterances and ostracism by coworkers do not).

      Informal and formal complaints with the EEOC are protected activities. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The question then turns on whether Plaintiff has alleged that she suffered an adverse employment action causally linked to her EEOC complaints. Plaintiff's opposition briefing focuses on McWhorter's emails. But Plaintiff does not explain how emails criticizing her work or explaining why formal training was not available would deter a reasonable employee from filing an EEO complaint. In addition, Plaintiff has not adequately alleged that Villalba's profane outburst is an adverse employment action. Such conduct is akin to the offensive utterances that the Ninth Circuit discussed as unactionable in *Ray*. As for Cummins' unsatisfactory attendance memorandum and AWOL charge, even assuming that such actions would deter a reasonable employee from engaging in protected activity, Plaintiff has not shown that Cummins' actions were causally linked to the protected activity beyond a conclusory statement that they constituted "reprisal actions." Though temporal proximity may be enough to satisfy the causation element of a prima facie case, *see Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008), here, Cummins' memo and AWOL designation came in March 2018, nearly a year after Plaintiff filed her informal EEO complaint and six months after she filed her formal EEO complaint. This timing

does not allow the Court to infer causation due to "an adverse employment action [that] follows on the heels of protected activity." *Id.* (discussing cases in which eighteen-month gap was found too long to support causation based on timing, but fifty-nine day gap and two month gap were sufficiently proximate). Therefore, the Court finds that Plaintiff has failed to allege sufficient facts supporting her claim for retaliation because, even taking all the allegations as true and in the light most favorable to Plaintiff as the nonmoving party, Plaintiff has not clearly stated that she suffered an adverse employment action such that she would be deterred from engaging in protected activity, nor has she pled a causal link between the protected activity and the adverse employment action. Plaintiff's retaliation claim is therefore DISMISSED WITHOUT PREJUDICE.

**7. Retaliation for Filing a Worker's Compensation Claim**

None of the federal statutes under which Plaintiff brings her claims support a claim for retaliation for filing a worker's compensation claim. California has a statutory scheme providing for a substantive right for those pursuing worker's compensation benefits to be free of retaliation, and therefore federal courts routinely remand such claims in order to avoid undermining the state's statutory scheme. *Quinones v. Target Stores*, 2005 WL 3157515, at *5 (N.D. Cal. Nov. 23, 2005). It follows that in order to properly plead retaliation for filing a worker's compensation claim cause of action, Plaintiff must point to the relevant state statute. *See Reynolds v. Amer. Nat. Red Cross*, 701 F.3d 143, 153 (4th Cir. 2012) (Plaintiff's retaliation claim based on worker's compensation inquiry fails because it is not covered by the ADA, but rather by retaliation provisions under state law); *Harris v. Treasure Canyon Calcium Co.*, 132 F.Supp.3d 1228, 1246 (D. Idaho 2015) (finding that Plaintiff's retaliation claim must fail because her filing of a worker's compensation claim was not protected activity under Title VII). Plaintiff does not point to specific facts supporting this claim in her SAC, nor does her opposition briefing provide clarity about the claim other than to state that "Plaintiff is not seeking relief for retaliation

under the ADA's retaliation provision." ECF No. 35 at 16. Without more, the Court finds that Plaintiff has failed to state a claim as to retaliation for filing a worker's compensation claim, and this claim is HEREBY DISMISSED WITHOUT PREJUDICE.

## III. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's Motion to Dismiss. Plaintiff is GRANTED leave to file a Third Amended Complaint. Any Third Amended Complaint should be filed within forty-five (45) days of the issuance of this Order.

**IT IS SO ORDERED.**

Dated: April 6, 2022

Hon. Gonzalo P. Curiel
United States District Judge